UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ROBIN WEISSMAN,

                Plaintiff,            **REPORT AND**
    -v-                                **RECOMMENDATION**

ARAMARK CORPORATION,        09-CV-1221 (DLI) (VVP)

                Defendant.
-----------------------------------------------------------------x
ARAMARK HEALTHCARE SUPPORT SERVICES,
LLC i/s/h/a ARAMARK CORPORATION,

                Third-Party Plaintiff,
    -v-

ST. JOHN'S EPISCOPAL HOSPITAL,

                Third-Party Defendant.
-----------------------------------------------------------------x

POHORELSKY, Magistrate Judge:

      The defendants in the above-captioned cases have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56, and Judge Irizarry has referred the motions to me for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The cases arise out of personal injuries sustained by the plaintiff Robin Weissman ("plaintiff" or "Ms. Weissman") at St. John's Episcopal Hospital ("St. John's" or "Hospital") and a contract for services and indemnification between St. John's and Aramark Corporation ("Aramark"). For the reasons that follow, the undersigned finds that no genuine issue of material fact remains as to the plaintiff's negligence claim and recommends that the plaintiff's complaint be dismissed with prejudice. The court also concludes, however, that issues of fact preclude summary judgment as to Aramark's and St. John's cross-claims against each other for indemnification for the costs they have incurred in defending this action.

**BACKGROUND**

The plaintiff commenced this action in February 2009 by the filing of a Summons and Complaint against Aramark in New York State Court. The plaintiff's complaint contains a single cause of action for negligence for injuries she suffered in a trip and fall accident that occurred at St. John's Hospital in Far Rockaway, New York in February 2008. St. John's, who is the plaintiff's employer and owner of the premises, had contracted with Aramark for the provision of managerial services at the hospital facilities. Aramark removed the action to federal court on the basis of diversity, and in February 2009, Aramark commenced a third-party action against St. John's for indemnification for defense costs and any potential recovery by the plaintiff. In its Answer, St. John's made a cross-claim against Aramark for indemnification for defense costs in this action. The parties have engaged in discovery related to the issues raised by the summary judgment motions before the court and rely on the information gleaned therein in their arguments.

The facts that form the basis for these two actions are further elaborated below. The court relies on the Local Civil Rule 56.1 Statements of Fact filed by the parties, as well as the exhibits attached to the parties' moving papers, and the pleadings, admissions, and prior discovery rulings that have occurred. The facts described below are undisputed unless otherwise noted.

<u>The Plaintiff's Accident</u>

On February 13, 2008, at approximately 12:00 p.m., the plaintiff and some of her co-workers decided to have lunch at the hospital cafeteria located in the basement of St. John's Hospital. Aramark Rule 56.1 Statement, at ¶¶ 1, 7-8 (Dkt No. 35). The plaintiff was walking to lunch with Nurse Noelle Anderson, Nurse Kathy Hanna, and Dr. Daniel Beer. *Id.* ¶ 8. While they were walking from the stairwell down the basement corridor to the hospital cafeteria, the plaintiff tripped and fell on a raised portion of the tile floor in the corridor. *Id.* ¶¶ 1, 8-9. As a result, the plaintiff suffered injuries to her knee and spine. *Id.* ¶ 2. After the plaintiff fell, she and her co-workers noticed a defect in the tile floor on which the plaintiff had tripped. These

individuals describe the defect in various ways, as a "lump" of concrete "embedded in the tile," "a bump in the floor," and "a bump in the middle of the tile." *Id.* ¶¶ 11, 26, 44. Neither the plaintiff nor her co-workers saw the defect on the floor before she fell. *Id.* ¶¶ 10, 26, 31, 44.

The plaintiff testified that sometime after she was injured, she contacted Michael Kaleda, an Aramark employee, to advise him about the tile and where it was located. *Id.* ¶ 14. At that time, Mr. Kaleda was Aramark's Assistant Director of Plant Operations and Maintenance (the Engineering Department) and one of two Aramark employees who worked in the Engineering Department. His job involved managing St. John's union maintenance employees. *Id.* ¶¶ 15-16. The plaintiff testified that when she called Mr. Kaleda he told her, "I know that tile." *Id.* ¶ 14. Mr. Kaleda testified, however, that he did not recall how he learned of the plaintiff's accident and had not received any complaints about the tile before that accident. *Id.* ¶ 18. He testified that when he first learned about the accident, he went to inspect the floor where it happened, identified it as a tripping hazard, and dispatched a St. John's painter to fix it. *Id.* ¶¶18-20. He did not recall stating to anyone that he had been aware of the defective tile before the plaintiff's accident. *See* Kaleda Deposition, attached to Thompson Decl. as Ex. H, at 67:18-68:20. Mr. Kaleda also testified that the St. John's employee that performed the repair told him that because of the proximity of the hospital to the beach, the bump in the floor was most likely caused by moisture and calcium deposits that had built up underneath. *Id.* at 26:17-25.

Another Aramark employee, James Jackson, testified that as Aramark's Director of Environmental Services during this time period he oversaw three Aramark supervisors and fifty-six St. John's service employees. Aramark Rule 56.1 Statement, ¶ 34; *but see* St. John's Counter Rule 56.1 Statement, at ¶ 34 (Dkt No. 41) (disputing that fifty-six staff members were St. John's employees). Part of Mr. Jackson's duties were to inspect the hospital to ensure that it was cleaned appropriately by the cleaning staff and for the purpose of assigning work to his managerial staff. Aramark Rule 56.1 Statement, at ¶ 35. Mr. Jackson testified that he would inspect the hospital facility three times a day in different areas to ensure it was clean and that the three Aramark supervisors also conducted inspections. St. John's Rule 56.1 Statement, ¶ 1 (Dkt

No. 47). Mr. Jackson testified that he never observed any defect in the floor during his inspections and that he had never received any reports of unevenness in the floor. Aramark Rule 56.1 Statement, at ¶¶ 36-38.

Aramark's and St. John's Mutual Indemnification Obligations

The contractual relationship between Aramark and St. John's is set out in a Managed Services Agreement dated January 8, 2003 that was in effect at the time of the plaintiff's accident. Aramark Rule 56.1 Statement, at ¶ 47 (a copy of which is attached to Aramark's Rule 56.1 Statement as Exhibit M) (hereafter "Managed Services Agreement" or "contract"). The contract authorizes Aramark to perform, on the hospital's behalf, certain "Managed Services" on the hospital's premises, which consist of the "management, supervision and operation by ARAMARK of Food Services, Housekeeping Services, and Plant Operations and Maintenance ["POM" or Engineering] Services." Managed Services Agreement at ¶¶ 1, 2(E).

In addition to specifying Aramark's duties under the contract, the agreement also defines situations in which Aramark and St. John's agree to indemnify one another against losses arising out of the performance of the contract. At issue in these summary judgment motions is which indemnification provisions in the contract apply to the plaintiff's claim as well as the proper interpretation of those provisions.

In a general indemnification provision, St. John's agrees to indemnify Aramark for losses that arise out of the performance of its obligations, unless Aramark's negligence caused the loss. Under that provision, St. John's agrees to indemnify Aramark:

> from and against all claims, actions, suits, proceedings, investigations, demands, fines, liabilities, judgments, settlements, damages, losses, costs and expenses (including reasonable legal fees) (collectively, "Damages") which may be asserted against ARAMARK, which result from, relate to, arise out of, or are a direct result of the performance of the Managed Services by ARAMARK, provided, however, that Hospital shall not protect, defend, indemnify and hold harmless ARAMARK from any claims for Damages arising in any way out of the sole negligence of ARAMARK.

Managed Services Agreement ¶ 4(C)(1). Aramark in turn promises to similarly indemnify St. John's against claims which arise from "the negligent performance of the Managed Services by ARAMARK." *Id.* ¶ 4(C)(2).

The other indemnification provisions at issue in this lawsuit are found in Exhibit C to the Managed Services Agreement, which more specifically defines Aramark's responsibilities for "Plant Operations and Maintenance." Like the general indemnification provisions, Exhibit C includes mutual indemnification provisions that provide for St. John's to indemnify Aramark except where Aramark is negligent and vice versa. Managed Services Agreement, Ex. C, at ¶¶ F, G. Exhibit C also specifically defines Aramark's responsibilities concerning "unsafe conditions" and addresses such conditions.

> ARAMARK does not hold itself out as a qualified environmental or safety consultant or contractor, and shall not be responsible for detecting any Hazardous Materials or Unsafe Conditions that may be present at or in the Facilities, for determining how to deal with them, or for removing them or otherwise remediating them.

Managed Services Agreement, Ex. C, at ¶ C.[1] "Unsafe Conditions" are defined as "conditions at or in Hospital or Nursing Home that are unsafe and may result in injury to persons, including, without limitation, structural deficiencies, dangerously defective equipment and the like." *See id.* at ¶ C. While Aramark is not responsible for detecting unsafe conditions, both parties are responsible for taking action once they become aware of unsafe conditions at the premises. Aramark has a duty to notify St. John's and clear the area, and St. John's has a duty to notify Aramark and remedy the condition. *Id.* at ¶ C.[2] Significantly, St. John's also agrees to

---

[1] Moreover, the contract states that "ARAMARK shall not be responsible for detecting or dealing with any other pre-existing conditions of the Facilities that may adversely affect operations, maintenance, use of the Facilities, or the health or safety of persons. ARAMARK shall not be responsible for detecting or dealing with defects in the design or construction of the Facilities, or manufacturing defects in equipment within the Facilities, whether pre-existing or arising during the term of the Agreement." Managed Services Agreement, Ex. C, at ¶ D.

[2] Paragraph C states in part:

> If ARAMARK at any time becomes aware of . . . any conditions in the Facilities that ARAMARK, in good faith, believes are Unsafe Conditions, ARAMARK shall promptly

- 5 -

"indemnify and hold harmless" Aramark from losses caused by unsafe conditions "to the extent not caused by the willful misconduct or negligent acts or omissions of ARAMARK." Managed Services Agreement, Ex. C, ¶ G(i).

## DISCUSSION

The court has jurisdiction based on diversity of citizenship and in the absence of conflicting contractual obligations applies the substantive law of the forum, New York. *General Star Nat. Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009). Federal procedural standards govern, including the federal standard on summary judgment under Federal Rule of Civil Procedure 56. *See id.; Doona v. OneSource Holdings, Inc.*, 680 F. Supp. 2d 394, 396-97 (E.D.N.Y. 2009); *Cousin v. White Castle System, Inc.*, No. 06-CV-6335, 2009 WL 1955555, at *4 & n.2 (E.D.N.Y. July 6, 2009).

### I. Legal Standards on Summary Judgment

Summary judgment will be granted if no genuine issue of material fact remains to be decided and the undisputed facts warrant judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Inst. for Shipboard Educ. v. Cigna Worldwide Inc. Co.,* 22 F.3d 414, 418 (2d Cir. 1994). If a reasonable jury could return a verdict in favor of the non-moving party, a material issue of fact remains in contention and the motion for summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986). On the other hand, if the evidence in favor of the non-movant is "merely colorable" or so insufficient such that no rational trier of fact could find in its favor,

---

> notify the Hospital, in writing, and shall take immediate steps to keep ARAMARK'S personnel assigned to duty on the Facilities and the Hospital's employees out of the area apparently affected by the . . . Unsafe Conditions . . . . If the Hospital at any time becomes aware of the presence of any . . . Unsafe Conditions in the Facilities, it shall promptly inform ARAMARK, in writing, of the type, nature, location and extent of the . . . Unsafe Conditions so that ARAMARK may avoid exposing ARAMARK's personnel assigned to duty on the Facilities, and the Hospital's employees, to them.

Managed Services Agreement, Ex. C, at ¶ C

summary judgment may be granted. *Id.* at 249-50 (citing *Dombrowski v. Eastland*, 387 U.S. 82 (1967)). Any ambiguities and all inferences must be drawn in favor of the non-movant, and the court must view the evidence in the light most favorable to the non-movant. *See Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 85 (2d Cir. 2006); *Inst. for Shipboard Educ.*, 22 F.3d at 418; *Twin Labs, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir. 1990). The court is charged not with weighing the evidence or even with determining the truth, but with ensuring that genuine issues of fact remain in dispute. *See Century Pacific, Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 218 (S.D.N.Y. 2007) (citing cases).

The burden of proving that no material issue of fact remains in dispute rests on the moving party. *Celotex Corp.,* 477 U.S. at 322; *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). Where both sides move for summary judgment, each party's motion is examined on its own merits, and all reasonable inferences are drawn against the party whose motion is under consideration. *Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011). If the moving party meets that initial burden by making an evidentiary showing suggesting that no material factual issues remain, the burden then shifts to the non-moving party to produce evidence raising a material question of fact. *See* Fed. R. Civ. Pro. 56(e); *Miner v. Clinton County, New York,* 541 F.3d 464, 471 (2d Cir. 2008); *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1998). Thus, to avoid summary judgment, the non-movant must set forth specific factual allegations. *Kurisoo v. Providence and Worcester R.R. Co.,* 68 F.3d 591, 594 (2d Cir. 1995); *Fahle v Braslow*, 913 F. Supp. 145, 148-49 (E.D.N.Y. 1996) (citations omitted), *affirmed* 111 F.3d 123 (2d Cir. 1997). In this vein, conclusory, *ipse dixit* assertions are not sufficient to defeat summary judgment. *Western World Ins. Co. v. Stock Oil Inc.,* 922 F.2d 118, 121 (2d Cir. 1990). "'The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient' to defeat summary judgment. Rather, 'there must be evidence on which the jury could *reasonably* find for the [non-movant].' Moreover, the opposing party must set forth 'concrete particulars' showing that a trial is needed." *Cousin*, 2009 WL 1955555, at *4 (quoting *Anderson*, 477 U.S. at 252). Although the non-movant need not

produce evidence in a form that would be admissible at trial, it cannot rest on the pleadings, and must set forth specific facts in affidavits, depositions, answers to interrogatories, or admissions on file, which together demonstrate a genuine issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex Corp.,* 477 U.S. at 324; *United States v. Rem*, 38 F.3d 634, 643-44 (2d Cir. 1994); *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004); *Grennan v. Nassau County*, No. 04-CV-2158, 2007 WL 952067, at *5 (E.D.N.Y. Mar. 29, 2007). That said, a non-movant who bears the burden of proof at trial is not required to submit affidavits, but may oppose the motion on the basis of the pleadings, depositions, and admissions on file. *Celotex*, 477 U.S. at 324; *Patterson*, 375 F.3d at 219. Moreover, a "verified pleading, to the extent that it makes allegations on the basis of the plaintiff's personal knowledge, and not merely on information and belief, has the effect of an affidavit and may be relied on to oppose summary judgment." *Patterson*, 375 F.3d at 219 (citing *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001)). The materiality of the facts is determined by the substantive law governing the claims, and whether they "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248.

Local Civil Rule 56 also directs litigants to file statements and counter-statements of material facts about which there is no dispute, and also requires that each factual statement be followed by a citation to admissible evidence, in accordance with Federal Rule 56(e). The court, in its discretion, may "overlook a party's failure to comply with local rules, including Rule 56.1." *Locke v. St. Augustine's Episcopal Church*, 690 F. Supp.2d 77, 83-84 (E.D.N.Y. 2010) (citing *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001)). Even in the absence of a Rule 56.1 statement altogether, courts have proceeded to rule on the basis of the underlying evidence. *See Locke*, 690 F. Supp. 2d at 84 (granting summary judgment for defendant despite failure to file Rule 56.1 statement); *Doe v. Nat'l Bd. of Podiatric Med. Examiners*, No. 03-CV-4034, 2004 WL 912599, at *3 (S.D.N.Y. Apr. 29, 2004) ("Plaintiff's motion will not be denied simply for failure to file a Local Rule 56.1 statement."); *United States v. Abady*, No. 03-CV-1683, 2004 WL 444081, at *2-3 (S.D.N.Y. Mar. 11, 2004) (defendant's failure to submit Rule

56.1 statement notwithstanding, court examines underlying evidence and substance of the claim before granting summary judgment for plaintiff). Lastly, a court "may in its discretion, opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file such a [Rule 56.1] statement." *Holtz*, 258 F.3d at 73 (quoting *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000)).

## II. Negligence: Aramark's Motion for Summary Judgment Against the Plaintiff

Aramark has moved for summary judgment on the plaintiff's negligence claim on the basis that it did not owe the plaintiff a duty of care in the execution of its maintenance services at the hospital, or in the alternative, that it did not breach its duty of care to her. As further discussed below, the court finds that, even viewing the evidence in the light most favorable to the plaintiff, she cannot establish that Aramark owed her a duty of care and recommends that her claim be dismissed.

### A. Duty of Care

In order to establish a prima facie case of negligence under New York law, a plaintiff must demonstrate that (1) the defendant owed her a duty of reasonable care, (2) the defendant breached that duty, and (3) the plaintiff suffered an injury that was proximately caused by the breach. *See Akins v. Glens Falls City School Dist.*, 53 N.Y.2d 325, 333, 424 N.E.2d 531 (1981); *Solomon v. City of New York*, 66 N.Y.2d 1026, 1027, 489 N.E.2d 1294 (1985); *Huth v. Allied Maintenance Corp.*, 143 A.D.2d 634, 635, 532 N.Y.S.2d 880 (2d Dep't 1988) (citing *Boltax v. Joy Day Camp*, 67 N.Y.2d 617 (1986)).

As opposed to the questions of breach and proximate cause, which often are for the finder of fact, the "existence and scope of a duty of care is a question of law for the courts entailing the consideration of relevant policy factors." *Church v. Callanan Industries, Inc.*, 99 N.Y.2d 104, 110-11, 782 N.E.2d 50 (2002); *see also Palka v. Servicemaster Management Services Corp.*, 83 N.Y.2d 579, 585, 634 N.E.2d 189 (1994) ("Unlike foreseeability and causation, which are issues

generally and more suitably entrusted to fact finder adjudication, the definition of the existence and scope of an alleged tortfeasor's duty is usually a legal, policy-laden declaration reserved for Judges").

Aramark argues that because it was a service contractor operating on property owned by St. John's pursuant to an agreement with St. John's, it did not owe a duty of care to a third-party such as the plaintiff. Aramark is correct that, as a general rule, "a contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third party." *Espinal v. Melville Snow Constrs.*, 98 N.Y.2d 136, 138, 773 N.E.2d 485 (2002); *see also Church*, 99 N.Y.2d at 111. The New York Court of Appeals has identified "only three exceptions" to this rule ("the *Espinal* exceptions"):

> (1) where the contracting party, in failing to exercise reasonable care in the performance of his duties, 'launche[s] a force or instrument of harm' [quoting *Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160, 168, 159 N.E. 896 (1928)]; (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties [citing *Eaves Brooks Costume Co. v. Y.B.H. Realty Corp.*, 76 N.Y.2d 220, 226, 556 N.E.2d 1093 (1990)] and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely [citing *Palka v. Servicemaster Mgt. Servs. Corp.*, 83 N.Y.2d 579, 589, 634 N.E.2d 189 (1994)].

*Stiver v. Good & Fair Carting & Moving, Inc.*, 9 N.Y.3d 253, 878 N.E.2d 1001 (2007) (quoting *Espinal*, 98 N.Y.2d at 140 and citing *Church*, 99 N.Y.2d at 112-113) (alterations in original). In assessing whether a defendant owes a duty in these circumstances, the court recognizes that "[c]ommon-law experience teaches that duty is not something derived or discerned from an algebraic formula. Rather, it coalesces from vectored forces including logic, science, weighty competing socioeconomic policies and sometimes contractual assumptions of responsibility." *Palka*, 83 N.Y.2d at 585.

The plaintiff argues that Aramark's actions fall under the first *Espinal* exception because it launched a force or instrument of harm by failing to notify St. John's of the defective floor. While the plaintiff recognizes that Aramark did not have an affirmative duty to inspect the premises for an unsafe condition, she argues that Aramark had a duty to "become aware of

unsafe conditions that may cause others harm" during its inspections of St. John's property. *See* Pl.'s Decl. in Opp. to Aramark Mot. for S.J., at ¶¶ 5-9 (Dkt. No. 42).[3] She argues that, in failing in this duty to "become aware" and advise the hospital of the unsafe condition, Aramark released an instrument of harm. Aramark responds that even assuming that it failed to properly inspect the premises, the plaintiff has failed to make any argument that its actions launched a force or instrument of harm.

The plain terms of the contract state that to the extent Aramark was aware of an unsafe condition, it was required to notify St. John's and ensure that its personnel and hospital personnel were kept out of the area. It is this aspect of the contract that the plaintiff relies on to argue that, in failing to detect, or report an unsafe condition, Aramark "launched an instrument of harm." As a preliminary matter, it is undisputed that the contract relieved Aramark of any responsibility to detect unsafe conditions. Nor does the plaintiff contend that Aramark created the unsafe condition that caused the plaintiff's injury. Thus, the issue is whether, assuming Aramark was on notice of the unsafe tile (which, as discussed below is a question of fact), it launched an instrument of harm when it failed to report it to St. John's and cordon off the area. The court concludes that it did not.

In *Moch Co. v. Rensselaer Water Co.*, the only case cited by the plaintiff to support her position, the defendant contracted with a city to supply water for various purposes, including water for fire hydrants with sufficient water pressure. 247 N.Y. 160 (1928). When a building caught fire and the hydrants failed to operate because of insufficient water pressure, the fire spread to the plaintiff's warehouse. The defendant was promptly notified of the fire but neglected to take appropriate action even though it had adequate resources to prevent the spread of the fire to the plaintiff's warehouse and the failure to deploy those resources was a breach of its contract with the city. *Id.* at 163. Judge Cardozo found that the plaintiff could not recover as

---

[3] St. John's disputes whether the bump on the floor the plaintiff tripped on was an "unsafe condition" as defined in the Managed Services Agreement. As discussed below, the court concludes that it is an unsafe condition and the plaintiff does not dispute this conclusion.

a third-party beneficiary to the contract or otherwise succeed in tort. In making the latter ruling, the court observed that tort liability to a third person may arise where "the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm, or has stopped where inaction is at most a refusal to become an instrument for good." *Id.* at 168. The latter category of omission identified in *Moch* is not as simple as failing to act, as Aramark did here. Rather, Judge Cardozo held that in order to give rise to tort liability in favor of a third party, a tortious omission would be accompanied by "malice or other aggravating elements." In assessing the case before it, the court in *Moch* concluded that the defendant's failure to act was not accompanied by such aggravating elements but was rather a "mere negligent omission" that was "at most the denial of a benefit . . . not the commission of a wrong." *Moch*, 247 N.Y. at 168.

Since *Moch*, New York courts have consistently held to Judge Cardozo's rule that a negligent omission or inaction without further malice or aggravating elements is insufficient to find that a defendant launched an instrument of harm. *See Prendergast v. Hobart Corp.*, No. 04-CV-5134, 2010 WL 3199699, at *7 (E.D.N.Y. Aug. 12, 2010); *see, e.g.*, *Stiver*, 9 N.Y.3d at 257 (vehicle inspector "cannot be said to have launched an instrument of harm [to party injured in automobile accident] since there is no reason to believe that the inspection made [the] vehicle less safe than it was beforehand" and "[i]nspecting the car did not create or exacerbate a dangerous condition"); *Church*, 99 N.Y.2d at 112 (defendant's incomplete performance of its contractual duty to install additional length in a highway guiderail system that plaintiff alleged would have prevented his accident did not fall under *Moch* exception); *Fairclough v. All Serv. Equip. Corp.*, 50 A.D.3d 576, 857 N.Y.S.2d 92, 93-94 (1st Dep't 2008) (defendant's failure to detect and replace a broken iron gate covering a stove burner during routine contractually mandated inspection did not launch a force or instrument of harm); *see also Crum & Forster Specialty Co. v. Safety Fire Sprinkler Corp.*, 405 F. Supp. 2d 223, 228 (E.D.N.Y. 2005) (sprinkler system contractor did not owe duty of care to building tenants, whose property was damaged by the bursting of a frozen sprinkler pipe).

Like the water supplier in *Moch*, Aramark's actions here would be at most a "mere negligent omission" (assuming it was on notice of the raised tile), not the "commission of a wrong" against the plaintiff. There is no support for the conclusion that the defendant took any affirmative action that created, exacerbated, or aggravated the condition that caused the plaintiff's injury. *See Espinal*, 98 N.Y.2d at 141-42 (explaining that, liability may lie under *Moch* exception if defendant "undertakes to render services and then negligently creates or exacerbates a dangerous condition"). Aramark and St. John's had a mutual obligation to notify one another should either party discover an unsafe condition. Even assuming that only Aramark was on notice of the unsafe condition, Aramark's failure to notify St. John's would potentially be a negligent omission and a breach of its contract with St. John's – it does not evidence an affirmative act that created or exacerbated the defect in the tile. *See Doona*, 680 F. Supp.2d at 403 (absent evidence defendant "created (negligently or otherwise) the puddle of water on the floor, or exacerbated it in some way" it could not be said to have launched a force or instrument of harm). Finally, as a policy matter, there is no indication that this result would leave the plaintiff without remedy as she can presumably recover under her employer's workplace insurance plan. Providing the plaintiff with an additional avenue of tort recovery against Aramark, who had no duty to inspect or repair, would extend the zone of duty too far.

The plaintiff does not appear to rely on the other two exceptions discussed in *Espinal*, and in any event, they would not apply.[4] It is worth examining a seminal case on the third exception because of the similarity of its facts to this one. In *Palka*, the New York Court of Appeals found that a hospital employee that was injured by a broken ceiling fan had a cause of action against a third-party maintenance contractor operating on the hospital's premises. 83

---

[4] The second exception, based on detrimental reliance, requires knowledge of the contract between the defendant and the owner of the premises. *See DeAngelis v. American Airlines Inc.*, No. 06-CV-1967, 2010 WL 1292349, at *4 (E.D.N.Y. Mar. 31, 2010); *O'Keefe v. Arbon Equipment Corp.*, 399 F. Supp. 2d 478, 485 (S.D.N.Y. Nov. 2, 2005) (citing *Occhino v. Citigroup Inc.*, No. 03-CV-5259, 2005 WL 2076588, at *7 (E.D.N.Y. Aug. 26, 2005) (citing *Bugiada v. Iko*, 274 A.D.2d 368, 369, 710 N.Y.S.2d 117 (2d Dep't 2000)). The plaintiff concedes that she had no knowledge of the agreement between Aramark and St. John's. Pl.'s Rule 56.1 Response, at ¶ 13 (Dkt. No. 45).

N.Y.2d 579. The contract between the defendant and the hospital did not provide for a general inspection program. *Id.* at 584. In finding that the maintenance company owed a duty of care to the plaintiff, the *Palka* court relied on a statement by a maintenance supervisor that his general duties included creating "a clean and safe environment," reducing "safety hazards," and engaging in "preventative maintenance and casualty control," defined as "primarily one of inspection and checking to see if something needs repairing before it falls." *Id.* (quoting from Director of Plant Operation's trial testimony, quotation marks omitted). The court pointed out that one entering a hospital "surely hold[s] a reasonable expectation that someone is in charge of and responsible for basic safety inspections and maintenance of equipment and the premises." *Id.* at 585-86. The court found that unlike other service contractors, the defendants there had entered into an agreement that "was comprehensive and exclusive" and in entering into that contract, the defendant undertook a duty to "maintain, manage and inspect property" and should have foreseen "'the likelihood of physical harm to third persons as a result of reasonable reliance by the owner on [it] to discover or repair dangerous conditions.'" *Id.* at 588-89 (citing Prosser and Keeton, Torts § 93, at 670 [5th ed.]). Unlike the defendant in *Palka*, it is undisputed here that the contract between Aramark and St. John's was not exclusive and comprehensive, but rather defined specific responsibilities for Aramark at the hospital. Most importantly, Aramark was specifically absolved of an affirmative duty to inspect the hospital premises for unsafe conditions. Therefore, the plaintiff has failed to set forth any basis for imposing a duty of care on Aramark to her in these circumstances.

For all of the reasons above, the plaintiff's argument that Aramark owed it a duty of care in its performance of maintenance services at St. John's fails at a matter of law and summary judgment should be granted in favor of Aramark on the plaintiff's claim.

### B. Breach

The remaining elements of the plaintiff's negligence action, should they be reached, cannot be resolved on summary judgment. Once a duty is established, "[a] defendant who

moves for summary judgment in a slip-and-fall case has the initial burden of making a prima facie showing that it neither created the dangerous condition nor had actual or constructive notice of its existence for a sufficient length of time to discover and remedy it." *Van Dina v. St. Francis Hosp., Roslyn, NY*, 45 A.D.3d 673, 674, 845 N.Y.S.2d 430, 431 (2d Dep't 2007). There is no contention that Aramark caused or created the condition that caused the plaintiff's accident and there is no dispute that Aramark did nothing to the defective floor before the plaintiff's accident. The parties are in dispute, however, as to whether Aramark knew or had constructive notice of the condition. Absent evidence of actual notice, the "notice question ordinarily raises a question of fact inappropriate for resolution by summary judgment." *Prodigy Services Co. v. South Broad Assocs.*, 64 F.3d 48, 52-53 (2d Cri. 1995). In order to establish constructive notice, the alleged defect must (1) be visible and apparent and (2) exist for a sufficient length of time prior to the accident to permit (a) discovery of the defect and (b) time to remedy the defect. *Gordon v. American Museum of Natural History*, 67 N.Y.2d 836, 837-38, 492 N.E.2d 774 (1986).

Here, the issue of either actual or constructive notice is disputed and turns mostly on the credibility of the various witnesses. The plaintiff and the individuals that were walking with her on the day of the accident testified that they only noticed the raised tile after the plaintiff fell. Although the plaintiff testified that Aramark employee Michael Kaleda stated to her that he "knew that tile" when she reported the accident to him, Mr. Kaleda denied making such a statement. Aramark's Director of Environmental Services James Jackson testified that he and both Aramark and St. John's employees inspected the hospital facility throughout the day to ensure that it was clean but that he never observed a defect in the floor. Finally, while there was testimony as to the size of the defect in the floor and conjecture by one witness as to how it had come into existence, there was no conclusive testimony as to how long it had been in the floor, an issue that is also relevant to constructive notice, see *Gordon*, 67 N.Y.2d. at 838. On this record, therefore, there remains an issue of fact as to whether Aramark was on notice of the defective condition that caused the plaintiff's injury.

**III.	Indemnification: Aramark and St. John's Cross-Motions for Summary Judgment**

While the plaintiff's claim against Aramark should be dismissed, Aramark and St. John's cross motions for summary judgment on indemnification would still need to be resolved to determine whether either party should indemnify the other for defense costs in this action. The court finds that there are issues of fact that should preclude summary judgment on this issue.

The Managed Services Contract between these two parties has multiple mutual indemnification clauses. In a general indemnification provision, St. John's agreed to indemnify Aramark for any claims asserted against Aramark that arise from the performance of their services unless the loss is caused by Aramark's "sole negligence." Managed Service Agreement, ¶ 4(C). Aramark in turn agreed to indemnify St. John's for losses not caused by Aramark's negligent performance of its services. In a second, more specific, indemnification provision in Exhibit C to the contract, St. John's further agreed to indemnify Aramark against losses caused by unsafe conditions at the hospital that were "not caused by the willful misconduct or negligent acts or omissions" of Aramark. *See id.* at Ex. C, ¶ G(i). Exhibit C also includes a general provision that Aramark will indemnify St. John's for losses caused by Aramark's negligence or willful misconduct. *Id.* at Ex. C. ¶ F. Neither party contends that the agreement is unenforceable, rather, Aramark and St. John's disagree as to two issues discussed below. In resolving these issues, the court adheres to the well-established rule that the right to recover under an indemnification provision of a contract will be determined by construing the intent of the parties as expressed in the contract. *See Bradley v. Earl B. Feiden, Inc.*, 8 N.Y.3d 265, 274 (2007); *Kurek v. Port Chester Housing Authority*, 18 N.Y.2d 450, 456, 223 N.E.2d 25 (1966); *Heath v. Soloff Construction, Inc.*, 107 A.D.2d 507, 512 487 N.Y.S.2d 617 (4th Dep't 1985) (courts will not give indemnification clauses "a strained or artificial meaning") (citing *Allen v. Cloutier Construction Corp.*, 44 N.Y.2d 290 (1978) and *O'Connor v. Serge Elevator Co.*, 58 N.Y.2d 655 (1982)).

The parties first dispute whether the general indemnification provision or the ones in Exhibit C apply. The court agrees with Aramark that the raised tile on which the plaintiff tripped was an "unsafe condition" as defined in the contract and that the indemnification provision in Exhibit C to the contract applies. The contract broadly defines unsafe conditions as those that "are unsafe and may result in injury to persons, including, without limitation, structural deficiencies, dangerously defective equipment and the like." Managed Services Agreement, Ex. C. ¶ C. Moreover, while Exhibit C governs plant operations and maintenance, there is nothing in the contract excluding the reach of the unsafe conditions provision therein from hospital corridors. One Aramark employee testified that an example of an unsafe condition was a spill. *See* Jackson Dep., attached to Thompson Decl. as Ex. K, at 18:14-19:12. Like a spill, the defect the plaintiff tripped on was a hazard on the floor that could lead someone to fall and injure him or herself. The undisputed facts in the record lead to the conclusion that the defect that caused the plaintiff to trip, whether it was a bump in the tile or a jutting piece of concrete, was an "unsafe condition" as contemplated by the contract. The ramifications of this conclusion are limited, however. Exhibit C still contains mutual indemnification clauses where each party indemnifies the other for losses caused by their own negligence.

The second issue of contention by the parties is whether Aramark is entitled to indemnification regardless of its negligence. Aramark's contention that the contract entitles it to unqualified indemnification is without merit. The terms of the contract make clear that each of these parties carried a responsibility as to unsafe conditions. As discussed above, an indemnification provision will be given effect as to its terms. A court will give effect to a contract that provides for indemnification even where the loss is caused by the indemnitee's negligence if such unqualified indemnification is expressed in unequivocal terms. *Bradley*, 8 N.Y.3d at 275; *see also Margolin v. New York Life Ins. Co.*, 32 N.Y.2d 149, 153, 297 N.E.2d 80 (1973) (enforcing indemnification provision in contract for "any and all damage or injury of any kind or nature" arising out of contractor's work even though contractor's negligence caused plaintiff's injury); *Kurek*, 18 N.Y.2d at 456-57 (enforcing contractual indemnification of

subcontractor whose negligence partially caused the loss where contract unequivocally stated that owner would indemnify subcontractor for "all claims and demands" of third persons "of whatsoever kind or nature"). The contract language states that St. John's will indemnify Aramark against losses caused by an unsafe condition, *"to the extent not caused by the willful misconduct or negligent acts or omissions of ARAMARK."* Thus, to the extent Aramark's negligence caused the plaintiff's accident, it would not be entitled to indemnification from St. John's.

As discussed above, there is a question of fact as to whether Aramark was on notice of the defective tile on the hospital floor and thus acted negligently vis-à-vis the unsafe condition that harmed the plaintiff. Although Aramark did not owe a duty of care to the plaintiff, it was bound under the contract to notify St. John's of any unsafe condition and cordon off the area. Likewise, St. John's was also required to notify Aramark of an unsafe condition if it became aware of one and there is testimony that St. John's employees performed cleaning services throughout the hospital. Since the record does not conclusively answer whether either party was on notice of the defective tile, the question of negligence cannot be resolved at this stage. The question of indemnification, including recovery of defense costs and fees of this action, therefore, should be for the finder of fact.[5]

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Aramark's motion for summary judgment on the plaintiff's negligence claim be granted and her case be dismissed with prejudice. To the extent Aramark and St. John's wish to pursue their claims for recovery against one another however, that issue should be for the finder of fact.

\*     \*     \*     \*     \*     \*

---

[5] Even if the general indemnification provision controlled, requiring St. John's to indemnify Aramark unless the loss was due to Aramark's "sole negligence," the analysis would change little at this stage. If it cannot be determined whether Aramark was negligent at all, it also cannot be determined whether Aramark was solely negligent or St. John's negligence also contributed to the plaintiff's injury.

- 18 -

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g.*, *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir. 1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

        Respectfully Submitted:

        *Viktor V. Pohorelsky*
        VIKTOR V. POHORELSKY
        United States Magistrate Judge

Dated: Brooklyn, New York
       August 26, 2011